**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE COLUMBIA DIVISION**

PATRICIA PORTER KRYDER, )
)
Plaintiff, ) Case No. 1:13-cv-00048
) Senior Judge Haynes
v. )
)
JAMES KEMMLER ROGERS and )
JENNIFER ROGERS-ETCHEVERRY, )
)
Defendants. )

**M E M O R A N D U M**

Plaintiff, Patricia Porter Kryder, a Tennessee citizen, filed this action under state contract law and the Declaratory Judgment Act, T.C.A. § 29-14-101, et. seq. against the Defendants James Kemmler Rogers, a California citizen, and Jennifer Rogers-Etcheverry, a California citizen with a durable power of attorney over Defendant James Rogers. The Defendants removed the action to this Court under 28 U.S.C. § 1332, the federal diversity statute, without objection.

Plaintiff's claims arise out of a promissory note made payable to Defendant Rogers. Plaintiff asserts state law claims for breach of contract and procurement of breach, breach of the implied duty of good faith and fair dealing, quantum merit, accounting, and declaratory judgment. Defendants assert counterclaims of promissory note/breach of contract, unjust enrichment, equitable lien, injunctive and declaratory relief, and lien lis pendens.[1]

Before the Court is Plaintiff's motion for partial summary judgment (Docket Entry No. 61) on the following two issues:

---

[1] On August 14, 2014, Defendant Jennifer Rogers-Etcheverry filed a suggestion of death (Docket Entry No. 75) of Defendant James Rogers. Subsequently, this Court granted Defendant Rogers-Etcheverry's motion to substitute as real party in interest in her capacity as Special Administrator of the estate of the deceased counter-plaintiff, James Rogers. (Docket Entry Nos. 82 and 85).

> (1) Count 1 of the Amended Counter-Claim seeks repayment of principal on a term note which under the four corners of the term note is not due until December 31, 2020, and without an acceleration clause in the promissory note, unpaid interest is the only remedy available to the Defendants as a matter of law.
>
> (2) When Defendant Jennifer Rogers-Etcheverry accelerated the principal balance on the term note she breached the terms of the promissory note as alleged in Count I and Count II of the Complaint.

In sum, Plaintiff contends that, under Tennessee law, Defendant Rogers-Etcheverry improperly accelerated the promissory note and, in so doing, breached the terms of the promissory note. Defendants filed a response in opposition (Docket Entry No. 72) contending that Defendants' Second Amended Answer and Counterclaim (Docket Entry No. 70) does not seek acceleration of the promissory note, rendering the issue moot, and that, under Tennessee law, there is no cause of action for breach of the implied duty of good faith and fair dealing.

For the reasons stated herein, Plaintiff's motion for partial summary judgment (Docket Entry No. 61) should be denied.

**A. Review of the Record[2]**

On January 15, 2010 Plaintiff, Patricia Kryder, signed a promissory note (Docket Entry No. 19-1) payable to Defendant James Rogers. (Docket Entry No. 71, Counter-Plaintiff's Response to Counter-Defendant's Statement of Material Undisputed Facts at ¶ 1). The original principal amount of the January 15, 2010 promissory note was $50,000.00, payable on or before December 31, 2020. Id.

[2] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).

On April 16, 2010, Plaintiff signed a second promissory note (Docket Entry No. 19-2), payable to Defendant James Rogers, that replaced the January 15, 2010 promissory note. Id. at ¶ 2. The original principal amount of the April 16, 2010 promissory note was $100,000.00, payable on or before December 31, 2020. Id.

It is undisputed that the April 16, 2010 promissory note does not provide for acceleration of the principal balance at any time prior to December 31, 2020. Id. at ¶ 8. Although the principal balance under the April 16, 2010 promissory note is not due until December 31, 2020, the promissory note does provide for the monthly payment of interest. Id. at ¶¶ 5-6. Plaintiff paid monthly interest from May 2010 through December 2011. Id. at ¶ 7.

Defendant James Rogers was the original holder of the April 16, 2010 promissory note. Id. at ¶ 3. Prior to becoming mentally incompetent, Rogers executed a general durable power of attorney, appointing Rogers-Etcheverry as his attorney-in-fact. (Docket Entry No. 70, Second Amended Answer and Counterclaim, Exhibit D). On August 14, 2014, Rogers-Etcheverry filed a suggestion of death (Docket Entry No. 75) of Defendant James Rogers. Subsequently, this Court granted Defendant Rogers-Etcheverry's motion to substitute as real party in interest in her capacity as Special Administrator of the estate of the deceased counter-plaintiff, James Rogers. (Docket Entry Nos. 82 and 85). Following the death of Defendant James Rogers, Defendant Rogers-Etcheverry is in possession of the original signed April 16, 2010 promissory note. (Docket Entry No. 71-1, Declaration of Jennifer Rogers-Etcheverry).

On September 11, 2012, counsel for Rogers-Etcheverry sent Plaintiff a letter that states in relevant part:

> The purpose of this letter is to advise you of our representation and

> notify you that the May 19, 2012, agreement with my client to "pause" payments is no longer in effect. We therefore request that either the principal sums be paid immediately, or, if you lack sufficient funding for that option, that the notes be made current and you come within compliance of their terms on or before October 1, 2012.

(Docket Entry No. 62-1, Letter from Edward M. Yarbrough to Patricia Porter Kryder).

In addition, Count I of Defendants' Amended Counterclaim asserts that:

> As a direct and proximate result of said breaches of the contractual obligations to Rogers, Counter-Defendant Kryder is liable to the Counter-Plaintiff for at least $100,000.00 in actual damages, plus interest, reasonable attorneys' fees, court costs and other expenses incurred by Counter-Plaintiff.

(Docket Entry No. 19, Amended Counterclaim at 7).

Yet, on July 30, 2014, the Court granted Defendants' motion for leave to file a second amended answer and counterclaim. (Docket Entry No. 69). Defendants subsequently filed a Second Amended Answer and Counterclaim, for which Count I asserts that:

> As a direct and proximate result of said breaches of the contractual obligations to Rogers, Counter-Defendant Kryder is liable to the Counter-Plaintiff for actual damages in the amount of unpaid interest pursuant to the Note, reasonable attorneys' fees, court costs and other expenses incurred by Counter-Plaintiff. Counter-Plaintiff is not currently seeking a judgment for the entire principal balance of the Note but rather is seeking a judicial foreclosure on the Property under the Deed of Trust that Counter-Plaintiff is asking this Court to enforce and put in place due to Counter-Defendant's default on the Note.

(Docket Entry No. 70, Second Amended Answer and Counterclaim at 15).

Plaintiff contends that both the letter from Rogers-Etcheverry's counsel and Count I of the Amended Counterclaim constitute improper acceleration of the promissory note and, as a result, Rogers-Etcheverry has breached the terms of the promissory note.

**B. Conclusions of Law**

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'")(quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he

> thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited

> marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in

ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under

the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

It is undisputed that the April 16, 2010 promissory note does not provide for acceleration of the principal balance at any time prior to December 31, 2020. (Docket Entry No. 71, Counter-Plaintiff's Response to Counter-Defendant's Statement of Material Undisputed Facts at ¶ 8). Yet, Plaintiff contends that Count I of Defendants' Amended Counterclaim seeks repayment of the principal balance due on the promissory note prior to the December 31, 2020 deadline established by the terms of the note.

To be sure, Count I of Defendants' Amended Counterclaim asserts that:

> As a direct and proximate result of said breaches of the contractual obligations to Rogers, Counter-Defendant Kryder is liable to the Counter-Plaintiff for at least $100,000.00 in actual damages, plus interest, reasonable attorneys' fees, court costs and other expenses incurred by Counter-Plaintiff.

(Docket Entry No. 19, Amended Counterclaim at 7) (emphasis added).

Yet, on July 30, 2014, the Court granted Defendants' motion for leave to file a second amended answer and counterclaim. (Docket Entry No. 69). See Ellison v. Ford Motor Co., 847 F.2d 297, 301 (6th Cir. 1988) (holding that a district court abuses its discretion when it grants summary judgment without first ruling on a pending motion to amend).[3] Defendants subsequently filed a Second Amended Answer and Counterclaim, for which Count I asserts that:

> As a direct and proximate result of said breaches of the contractual obligations to Rogers, Counter-Defendant Kryder is liable to the Counter-Plaintiff for actual damages in the amount of unpaid interest pursuant to the Note, reasonable attorneys' fees, court costs and other expenses incurred by Counter-Plaintiff. Counter-Plaintiff is not

[3] The Court also previously granted Plaintiff's motion to amend pleadings to clarify legal theory on July 28, 2014. (Docket Entry No. 67).

> currently seeking a judgment for the entire principal balance of the Note but rather is seeking a judicial foreclosure on the Property under the Deed of Trust that Counter-Plaintiff is asking this Court to enforce and put in place due to Counter-Defendant's default on the Note.

(Docket Entry No. 70, Second Amended Answer and Counterclaim at 15) (emphasis added).

Accordingly, because the Second Amended Answer and Counterclaim (Docket Entry No. 70) supplants the Amended Counterclaim (Docket Entry No. 19), Plaintiff's motion for partial summary judgment is denied as moot with respect to Count I of the Amended Counterclaim.

Yet, Plaintiff also contends that, despite the amendment of Count I in the Second Amended Answer and Counterclaim, summary judgment remains appropriate because the letter sent to Plaintiff from counsel for Rogers-Etcheverry on September 11, 2012 (Docket Entry No. 62-1) improperly "accelerated the debt." (Docket Entry No. 76, Plaintiff's Reply to Response to Motion for Partial Summary Judgment at 2). That letter reads in relevant part:

> The purpose of this letter is to advise you of our representation and notify you that the May 19, 2012, agreement with my client to "pause" payments is no longer in effect. We therefore request that either the principal sums be paid immediately, or, if you lack sufficient funding for that option, that the notes be made current and you come within compliance of their terms on or before October 1, 2012.

(Docket Entry No. 62-1, Letter from Edward M. Yarbrough to Patricia Kryder).

Under Tennessee law, the interpretation of written documents is a matter of law appropriate for the court to decide. See Crossville, Inc. v. Kemper Design Center, Inc., 758 F. Supp.2d 517, 526 (M.D. Tenn. 2010) (citing Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006)). The "determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there

is no genuine factual issue left for a jury to decide." Planters Gin Co. v. Federal Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002). To be sure, the September 11, 2012 letter at issue here is not a contract. Yet, because the parties dispute only the legal effect of the letter, the Court concludes that there is no genuine factual dispute for the jury to decide with respect to the letter. Accordingly, the Court must determine the legal effect of the September 11, 2012 letter as a question of law.

An acceleration clause is a "loan-agreement provision that requires the debtor to pay off the balance sooner than the due date if some specified event occurs, such as failure to pay an installment or to maintain insurance." Black's Law Dictionary, 14 (10th ed. 2014) (emphasis added). Thus, under Tennessee law, "[w]hen the payee accelerates the debt, the debt becomes due and payable. In that circumstance, the payor is not choosing to pay early; he must pay because the debt has become due." Sound Stage Studios, Inc. v. Life Investors Ins. Co. of America, 1998 WL 138827,*2 (Tenn. Ct. App. Dec. 30, 1988) (emphasis added).

Here, the letter sent to Plaintiff from counsel for Rogers-Etcheverry "requests" that either the principal sums be paid immediately or the note be made current and Plaintiff come within compliance of the terms of the note on or before October 1, 2012. The letter is clear and unambiguous in providing Plaintiff the option to merely bring the note current and come within compliance of the terms of the note, rather than pay the entire principal balance. As such, the letter does not "require the debtor to pay off the balance" prior to the original due date of December 31, 2020. Accordingly, the Court concludes that the letter sent to Plaintiff on September 11, 2012 (Docket Entry No. 62-1) does not constitute an acceleration of the balance due on the promissory note.

Plaintiff's second issue for summary judgment contends that, as a result of Rogers-Etcheverry's acceleration of the principal balance on the promissory note, Defendant has breached the terms of the promissory note as alleged in Counts I and II of the Complaint. Count I of Plaintiff's Amended and Restated Complaint (Docket Entry No. 80) asserts claims for breach of contract and procurement of breach; Count II asserts claims for breach of the implied duty of good faith and fair dealing.

As an initial matter, the Court notes that "it is well established that '[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts'" Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 660 (Tenn. 2013) (citing Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996)). Thus, "there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement, and a person is presumed to know the law." Id. Yet, "a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather may be an element or circumstance of recognized torts, or breaches of contracts." Upperline Equipment Co. v. J & M, Inc., 724 F. Supp.2d 883, 892 (E.D. Tenn. 2009) (internal citations omitted); see also Envoy Corp. v. Quintiles Transnational Corp., No. 3:03cv0539, 2007 WL 2173365 at *8 (M.D. Tenn. July 26, 2007) (finding that "absent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing).[4]

Moreover, for the reasons stated supra, the Court concludes that summary judgment is not appropriate with respect to whether Rogers-Etcheverry improperly accelerated the principal balance

[4] Although the Envoy court was interpreting North Carolina law, the Upperline Equipment court nonetheless found the reasoning persuasive in light of the similar reasoning in Solomon v. First American Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn Ct. App. 1989) (noting that "it does not appear that good faith, or the lack of it . . . standing alone, [is] an actionable tort.").

of the promissory note. As such, Plaintiff's second issue for summary judgment, that Rogers-Etcheverry has breached the terms of the promissory note as alleged in Counts I and II of the Complaint as a result of her improper acceleration of the promissory note, is not well taken.

Accordingly, the Court concludes that Plaintiff's motion for partial summary judgment (Docket Entry No. 61) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of March, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge