# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| PATRICIA PORTER KRYDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ESTATE OF JAMES KEMMLER ) | |
| ROGERS, JENNIFER ROGERS- ) | |
| ETCHEVERRY, ) | |
| ) | |
| Defendants. ) | |
| ) | No.: 1:13-cv-00048 |
| ) | Chief Judge Crenshaw |
| JENNIFER ROGERS-ETCHEVERRY, ) | |
| as administrator for the ESTATE OF ) | |
| JAMES KEMMLER ROGERS, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PATRICIA PORTER KRYDER, ) | |
| ) | |
| Counter-Defendant. ) | |

## MEMORANDUM OPINION

On November 2, 2017, the Court entered an Order (Doc. No. 178) and accompanying 28-page Memorandum Opinion (Doc. No. 177), familiarity with which is assumed. The Court (1) granted Jennifer Rogers-Etcheverry's Motion for Summary Judgment (Doc. No. 136) on all of the claims set forth in Patricia Kryder's Amended and Restated Complaint, and (2) granted Etcheverry's Counterclaims for breach of contract and request for an equitable lien.

Kryder has filed a Motion to Alter or Amend. (Doc. No. 182). That motion, which has been fully briefed by the parties (Doc. Nos. 183, 184 & 185-1), will be denied.

**I**. **Applicable Rule**

Kryder brings her Motion under Rules 52(b), 59(e) and 60(b) of the Federal Rules of Civil Procedure. Her reliance on Rules 52(b) and 59(e), however, is misplaced.

Rule 52(b) provides that, within 28 days of a final judgment after a bench trial, a party can request additional findings. Rule 59(e) allows for the filing of a motion to alter or amend within "28 days after the entry of judgment." There was no bench trial in this case, and, as yet, no final judgment has entered. See CGH Transp., Inc. v. Quebecor World, Inc., 261 F. App'x 817, 823 n. 10 (6th Cir. 2008) (observing that Rule 59(e) only applies to a final judgment and is inapplicable where the court merely grants summary judgment on one or more claims); Kline v. Archuleta, 309 F.R.D. 91, 93 (D.D.C. 2015) (collecting cases for the proposition that, because a court does not engage in fact-finding on a motion for summary judgment, a 52(b) motion is not the appropriate vehicle to alter or amend a summary judgment ruling).

As for Rule 60(b), that rule is cited in Kryder's Motion, but not addressed in her accompanying Memorandum of Law. The Rule provides:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The only arguable bases for relief under this Rule is either "mistake" under subsection 1, which includes a claim of legal error, Okoro v. Hemingway, 481 F.3d 873, 874 (6th Cir. 2007), or the catch-all provision of subsection 6, which "requires a showing of 'extraordinary circumstances,'" Gonzales v. Crosby, 545 U.S. 524, 546 (2005). Kryder has not shown either legal error, or extraordinary circumstances meriting relief.

## II. The Promissory Note

In her Motion, Kryder

> asks the court to reconsider the character of the promissory note as a nonnegotiable instrument in which the Counter-Plaintiff has the burden to prove extensions of credit as part of proving the existence of a contract and damages. Correctly identifying the burden of proof on the promissory note is essential to the application of the dead man's statute. Under the deadman's statute, if testimony is allowed to establish the extensions of credit under a nonnegotiable note, then Kryder is entitled to offer proof of satisfaction and set-off under the deadman's statute.

(Doc. No. 182 at 1). In her accompanying Memorandum, Kryder claims that this Court's "opinion seems to assume that the promissory note dated April 16, 2010 is a self-attesting negotiable instrument for a fixed sum, and that Ms. Kryder cannot testify to prove her claim of satisfaction, or her affirmative defense of set off." (Doc. No. 183 at 1).

For supposedly making such an assumption, the Court spilled a lot of ink discussing (1) the Deadman's Statute; (2) the statute of limitations; (3) hearsay; and (4) the reasons why Kryder had failed to establish a genuine issue of material fact on any of the essential elements of a Etcheverry's breach of contract claim. Had the Court simply "assumed" the Promissory Note was a negotiable instrument, such discussions likely would not have been necessary.

Instead, the focus would have been on Tennessee's version of Article 3 of the Uniform

3

Commercial Code, which defines a "negotiable instrument" as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) Is payable on demand or at a definite time; and (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." Tenn. Code Ann. § 47–3–104(a). Given this definition, the Court's discussion regarding the substitution of parties also would have also been likely unnecessary because "allegations regarding ownership" of a negotiable instrument is "immaterial." Thornley v. U.S. Bank, N.A., No. M2014–00813–COA–R3–CV, 2015 WL 3989380, at *6 (Tenn. Ct. App. June 30, 2015).

That aside, Kryder's contention that Etcheverry "cannot establish the contract or damages as an essential element of her claim without calling the barred witness, James Kemmler Rogers to the stand" (Doc. No. 183 at 2) is simply wrong given the language of the promissory note and the admissions Kryder made in her pleadings. Although Kryder is correct that, "[w]hen interpreting contracts, if language is susceptible of two different interpretations, the reasonable interpretation is adopted," (id. at 3-4 citing Gibson v. Int'l Harvester Co., 557 F. Supp. 1000, 1003 (W.D. Tenn. 1983)), it is also true that "Tennessee courts adhere to the general rule that ambiguities in a contract are construed against the drafter," Dog House Invs., LLC v. Teal Props., Inc., 448 S.W.3d 905, 913 (Tenn. Ct. App. 2014), which in this case was Kryder, an attorney. Construed against the drafter, the Promissory Note evidenced that Kryder received $100,000 from Rogers and promised to repay that amount, as this Court previously held. (Doc. No. 177 at 23-24).

Kryder also argues that Etcheverry:

> has not produced any cancelled checks or bank statements which show an extension of credit to Kryder on or about April 16, 2010, the date of the note. In fact, the Counter-Plaintiff failed to show any extension of credit at any time. Therefore, the Counter-Plaintiff has not proven damages as a matter of law.

(Doc. No. 183 at 6). A similar argument is made in relation to Kryder's claims for set-off, with the argument there being that, in the absence of proof of an extension of credit, Kryder would have to be called to the stand, in which case the Deadman's Statute would not apply, and Kryder could testify that Rogers admitted to setting the fire, and agreed to reduce the note for rent and pasture fees.

As this Court stated in its prior ruling, however, "[t]he plain construction of the note" showed that $100,000 was advanced, and "Kryder cannot credibly argue that she did not receive the $100,000 reflected in the Note," given the allegation in both her Amended and Restated Complaint. (Doc. No. 177 at 24). In that Complaint, Kryder alleged:

> 12. Rogers advanced funds to Kryder through his frequent flyer credit card, for which Kryder executed a note dated January 15, 2010 in the principal amount of $50,000.
>
> 13. Rogers later agreed to advance an additional Fifty Thousand Dollars ($50,000) to Kryder through use of his frequent flyer credit card, checks, and a wire transfer. In consideration of Rogers' agreements as a result thereof, the parties executed a subsequent note dated April 16, 2010 in the amount of One Hundred Thousand Dollars ($100,000). This April 16 note <u>consolidated the two (2) advances of Fifty Thousand Dollars ($50,000) each</u> and replaced, voided and nullified the January 15 note.

(Doc. No. 80, Complaint ¶¶ 12-13) (emphasis added). Those statements are as binding on Kryder now, as they were when first made. See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (stating that allegations in a complaint are "judicial admission" through by which a party is "bound throughout the course of the

5

proceeding").

In her reply brief – for which leave to file has been requested (Doc. No. 185) and will be granted – Kryder argues that "[j]udicial admissions are limited to matters of fact as opposed to legal conclusions." (Doc. No. 185-1 at 2) (citing Barnes v. Owens-Corning Fiberglass Corp., 201 F.3d 815, 829 (6th Cir. 2000)). This may be true, but the language on which the Court relied consists of factual allegations from the Complaint, and "[f]actual assertions in pleadings . . ., unless amended, are considered judicial admissions conclusively binding on the party who made them." Kay v. Minacs Grp. (USA), Inc., 580 F. App'x 327, 331 (6th Cir. 2014) (citation omitted); see Soo Line R.R. Co. v. St. Louis SW Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997) (noting that a "plaintiff can plead himself out of court by alleging facts which show that he has no claim," and stating that "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible").

Ignoring the language in her Amended and Restated Complaint, Kryder argues that her Answer to Etcheverry's Counterclaim, as well as her Counterclaim, both show that she denies receiving $100,000, and she claims the note was satisfied. More specifically, in her Answer Kryder (1) "denie[d] that funds were drawn on or about April 16, 2010 in the amount of $100,000"; (2) "denied that there is any amount due under the Note"; and (3) asserted that "Roger, prior to death, did not seek repayment of the Note because it was satisfied." (Doc. No. 185-1 at 2). Moreover, in her Counter-claim, Kryder relied on the defense of accord and satisfaction, and claimed that Etcheverry was "demanding repayment of an alleged debt that was fully satisfied." (Id. at 3).

The fact that Kryder denied receiving $100,000 on April 16, 2010 does not undercut her judicial admissions that were relied upon by the Court. The evidence is clear that monies were first

6

advanced on or before the initial January 16, 2010 Promissory Note, and the April 16, 2010 Note consolidated the two $50,000 Notes. As for set-off and/or accord and satisfaction, this Court never suggested that Kryder was not making such claims, although a skeptic could be forgiven for finding it ironic that, in one breath, Kryder "contends that the amount of $100,000.00 was not extended by the holder," but, in the very next breath, proclaims that "more importantly, the note was satisfied." (Doc. No. 185-1 at 2). Instead, the Court found that Kryder's claims could not survive summary judgment because of the Deadman's Statute, the hearsay rule, and the applicable statute of limitations. See Risch v. Royal Oak Police Dep't, 581 F.3d 383, 394 (6th Cir. 2009) ("In opposing a defendant's motion for summary judgment, the plaintiff must submit admissible evidence from which a reasonable juror could find that she has met her burden.").

Nothing Kryder presents in her Motion to Alter or Amend leads this Court to conclude that it erred in granting summary judgment on Kryder's claims and Etcheverry's Counterclaim for breach of contract.

### III. Substitution of Parties

Kryder argues that the Court erred in concluding that Etcheverry was not substituted as a party Defendant because, in Etcheverry's notice under Rule 25, she "is referred to as a 'party,'" and "[f]rom this, it is reasonable to conclude that she substituted herself in by agreement for all purposes." (Doc. No. 183 at 12). The Court disagrees for the reasons stated in the prior ruling:

> In this case, after the suggestion of Rogers' death was filed, the only Motion to Substitute was filed by Etcheverry and that request was very limited. Etcheverry specifically asked that she be substituted "as Special Administrator of the Estate of James Kemmler Rogers as the Counter-Plaintiff in this case," (Doc. No. 81 at 3), which was subsequently granted by Order (Doc. No. 82) of Judge Haynes. While Judge Haynes' Order merely stated "[t]he motion is GRANTED," any doubts as to its scope was removed when Judge Haynes entered a subsequent Order on Kryder's Motion to Reconsider in which he specifically noted that Etcheverry "filed a motion

7

> for substitution of real party in interest as the Counter-Plaintiff in place of the original Counter-Plaintiff, James Rogers." (Doc. No. 85 at 1-2).
>
> There was never a suggestion in this case that Etcheverry would substitute as anything other than the Counter-Plaintiff, notwithstanding the fact that the Kern County, California Superior Court (where Rogers' estate was probated) gave her permission to "to substitute in as a defendant and cross-complainant." (Doc. No. 81-1 at 1). Indeed, it would make little sense for her to voluntarily become the Defendant in this lawsuit, unless, of course, she wanted to exhibit a largesse heretofore not displayed by the parties to this lawsuit. It was incumbent upon Kryder to move for that substitution, which she did not do.

(Doc. No. 177 at 10).

Kryder cites Watts v. Novartis Pharm. Corp., 2015 WL 1456647 (N.D. Ohio Mar. 30, 2015) for the proposition that the 90 day period to substitute under Fed. R. Civ. P. 25 was not properly triggered because the notice of death by Etcheverry "did not identify the representative or proper successor of decedent." (Doc. No. 183 at 14). However, this Court has already explained why Kryder's reliance on Watts is misplaced. (Doc. No. 177 at 10-11).

Kryder also argues that the 90-day period to substitute was not triggered because, while her lawyers received notice of death through the filing of a certificate of service, the record "indicates that there was no service on Ms. Rogers-Etchverry [sic] or on the Estate of James Kemmler Rogers or his personal representative of on other heirs at law." (Id. at 12). It is undisputed that Etcheverry filed a Motion for Substitution (Doc. No. 81) based upon her being the Special Administrator/Personal Representative of Rogers' estate, which Judge Haynes granted (Doc. No. 82). It would be an exercise in futility for Etcheverry to have to serve herself. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 343 (2d Cir. 2006) (citation omitted) ("The fundamental command of the Federal Rules of Civil Procedure is never to exalt form over substance."); Clarke v. Mindis Metals, Inc., 99 F.3d 1138 (6th Cir. 1996) (noting that, pursuant to

8

Fed. R. Civ. P. 1, a court is to "construe and administer the Federal Rules of Civil Procedure in a manner so as 'to secure the just, speedy, and inexpensive determination of every action'").

Kryder's reliance on cases like <u>Sampson v. ASC Indus.</u>, 780 F.3d 679 (5th Cir. 2015), and <u>Atkins v. City of Chicago</u>, 547 F.3d 869 (7th Cir. 2008) is misplaced. In <u>Sampson</u>, the Fifth Circuit observed that "[s]ervice of the notice of death on the personal representative for a deceased-plaintiff's estate is generally required," because "'[p]ersonal service of the suggestion of death alerts the nonparty to the consequences of death for a pending suit, signaling the need for action to preserve the claim if so desired.'" 780 F.3d at 681. <u>Atkins</u> involved a situation where an attorney substituted himself for his client, instead of the client's wife, with the Seventh Circuit observing "that an obviously interested nonparty . . . must be served for the 90-day clock to start running," thereby "protect[ing] the nonparty from finding [herself] in a situation in which a lawyer for someone else (the decedent) has thrust [her] into a case that [s]he would rather not be in." 547 F.3d at 873-74. Here, of course, Etcheverry was already a party to the suit who knew of her father's passing.

Regardless, and as the Court observed in its prior ruling, even if Kryder was not required to file her own motion for substitution, there were a number of substantive reasons why summary judgment was warranted on her claims and those reasons were addressed in detail in this Court's ruling. (Doc. No. 177 at 11-21). The Court stands by that reasoning.

## V. Conclusion

On the basis of the foregoing, Kryder's Motion for Leave to File a Reply (Doc. No. 185) will be granted, but her Motion to Alter or Amend (Doc. No. 182) will be denied.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE